H7JQLEWp

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA
 3
                  v.                        16 CR 396 (GHW)
 4                                          Plea
     KEVIN LEWIS
 5
                       Defendant
 6   ------------------------------x

 7                                          New York, N.Y.
                                            July 19, 2017
 8                                          1:05 p.m.

 9
     Before:
10
                        HON. GREGORY H. WOODS
11                                          District Judge

12
                            APPEARANCES
13
     JOON H. KIM
14        Acting United States Attorney for the
          Southern District of New York
15   JASON SWERGOLD
          Assistant United States Attorney
16
     IRVING COHEN
17        Attorney for Defendant Lewis

18

19

20

21

22

23

24

25
```

H7JQLEWp

1            (In open court; case called)

2            MR. SWERGOLD:  Good afternoon, your Honor.  Jason

3    Swergold for the government.

4            THE COURT:  Thank you.  Good afternoon.

5            MR. COHEN:  Good afternoon, your Honor.  Irving Cohen

6    appearing for Mr. Lewis.

7            THE COURT:  Good afternoon.

8            Good afternoon to you, Mr. Lewis.  You can be seated.

9            MR. COHEN:  Mr. Lewis is just in the process of

10   signing the plea agreement, your Honor.

11           THE COURT:  Thank you.

12           Mr. Lewis, I have been informed that you wish to plead

13   guilty to a lesser included offense to Count One of the

14   indictment that's numbered 16 CR 396.  Is that correct?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Thank you.

17           Before I accept your guilty plea, Mr. Lewis, I'm going

18   to ask you a number of questions so that I can establish to my

19   satisfaction that you wish to plead guilty because you are in

20   fact guilty and not for some other reason, and also to ensure

21   that you know what it is that you will be giving up if you

22   choose to proceed and plead guilty.

23           If you don't understand any of my questions, or if

24   you'd like to consult with your lawyer at any time for any

25   reason, please just let me know, and I will be happy to give

H7JQLEWp

```
 1   you as much time as you'd like to either confer with your

 2   counsel or for me to clarify the responses of my questions to

 3   you if it's helpful to you in responding.

 4            First, Mr. Lewis, I'd like to ask you to please take

 5   an oath to answer the questions that I'm going to be putting to

 6   you here truthfully.  Please stand.

 7            (Defendant sworn)

 8            THE COURT:  Mr. Lewis, you are now under oath, which

 9   means that if you answer any of my questions falsely, you can

10   be prosecuted for the separate crime of perjury or making false

11   statements.  The government has the right to use any statements

12   that you give under oath against you in such a prosecution.  Do

13   you understand that?

14            THE DEFENDANT:  Yes, sir.

15            THE COURT:  Thank you.

16            First, Mr. Lewis, can you please tell me your full

17   name.

18            THE DEFENDANT:  Kevin Curtis Lewis.

19            THE COURT:  How old are you?

20            THE DEFENDANT:  31.

21            THE COURT:  Where were you born?

22            THE DEFENDANT:  Bronx, New York.

23            THE COURT:  Can you tell me how far you went in

24   school?

25            THE DEFENDANT:  Ninth grade.
```

H7JQLEWp

1          THE COURT:  Can you describe for me briefly, please,

2     your employment experience.

3          THE DEFENDANT:  I only had one job in my life.

4          THE COURT:  Thank you.  What was that?

5          THE DEFENDANT:  Construction.

6          THE COURT:  Thank you.

7          Mr. Lewis, have you ever been treated or hospitalized

8     for any mental illness?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Thank you.  What was that?

11          THE DEFENDANT:  Depression, nightmares, stuff like

12     that.

13          THE COURT:  I'm sorry.  Depression and what else?

14          THE DEFENDANT:  Nightmares.

15          THE COURT:  Thank you.  How long ago was that that you

16     were treated?

17          THE DEFENDANT:  2015.

18          THE COURT:  Thank you.

19          Can I ask, is that a condition that impacts your

20     ability to understand what's happening in this proceeding

21     today?

22          THE DEFENDANT:  No, I understand.

23          THE COURT:  Thank you.

24          Mr. Lewis, are you currently or have you recently been

25     under the care of a physician, psychiatrist or psychologist?

H7JQLEWp

1              THE DEFENDANT:  No.

2              THE COURT:  Are you currently or have you recently

3    been hospitalized or treated for drug addiction?

4              THE DEFENDANT:  Been treated?

5              THE COURT:  Yes.

6              THE DEFENDANT:  You mean like in a program or

7    something?

8              THE COURT:  Yes.

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Thank you.  Can you tell me when that was?

11             THE DEFENDANT:  This year.  I'm in a program right now

12   for drug treatment, and I completed one drug treatment program

13   while I was in MCC custody.

14             THE COURT:  Thank you very much.

15             Can I ask whether any element of the treatment that

16   you've received or the condition that you were being treated

17   for has had any impact or has any impact on your ability to

18   understand what's happening in this proceeding?

19             THE DEFENDANT:  I understand.

20             THE COURT:  Thank you.

21             Within the past 24 hours, Mr. Lewis, have you used or

22   taken any alcohol, drugs or medication?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Is your mind clear today?

25             THE DEFENDANT:  Yes, sir.

H7JQLEWp

1           THE COURT:  Do you understand what's happening in this

2    proceeding?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Have you received, Mr. Lewis, a copy of

5    the indictment that's pending against you?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  Have you had enough of a chance to discuss

8    with your lawyer the case in general and, in particular, the

9    charge to which you intend to plead guilty and any possible

10   defenses to that charge?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Has your lawyer explained to you the

13   consequences of entering a plea of guilty?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Are you fully satisfied with your lawyer's

16   representation of you?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Thank you very much.

19          Counsel, can I turn to you, please.  Mr. Cohen, have

20   you discussed this matter with your client?

21          MR. COHEN:  Yes, your Honor.

22          THE COURT:  Is he capable of understanding the nature

23   of these proceedings?

24          MR. COHEN:  Completely.

25          THE COURT:  Thank you.

H7JQLEWp

1          Mr. Swergold, Mr. Cohen, do either of you have any
2     doubt as to the defendant's competence to plead at this time?
3          MR. SWERGOLD:  No, your Honor.
4          MR. COHEN:  No, your Honor.
5          THE COURT:  Thank you.
6          On the basis of Mr. Lewis' responses to my questions,
7     my observations of his demeanor here in court, and the
8     representations of counsel, I find that Mr. Lewis is competent
9     to enter a plea of guilty at this time.
10          Now, Mr. Lewis, before we turn to your plea, I am
11    going to explain certain constitutional rights that you have.
12    I do this because these are rights that you will be giving up
13    if you choose to proceed and enter a guilty plea.  Again,
14    please listen carefully to what I am about to say, and if you
15    don't understand anything, please don't hesitate to stop me,
16    and I or your counsel will explain the matter more fully.
17          First, Mr. Lewis, you have the right to plead not
18    guilty to the charge against you in the indictment.  Do you
19    understand that?
20          THE DEFENDANT:  Yes, sir.
21          THE COURT:  If you did plead not guilty, you would be
22    entitled to a speedy and public trial by a jury on the charge
23    contained in the indictment against you.
24          THE DEFENDANT:  Yes, sir, I understand.
25          THE COURT:  Do you understand that?  Thank you.

H7JQLEWp

1            At a trial, you would be presumed to be innocent, and

2    the government would be required to prove you guilty by

3    competent evidence beyond a reasonable doubt before you could

4    be found guilty.  Do you understand that?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  A jury of 12 people would have to agree

7    unanimously that you were guilty, and you would not have to

8    prove that you were innocent if you were to go to trial.  Do

9    you understand that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  At trial, and at every stage of your case,

12   you would be entitled to be represented by a lawyer.  If you

13   could not afford a lawyer, one would be appointed for you at

14   public expense; that is, free of cost.  Do you understand that?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  During a trial, the witnesses for the

17   government would have to come to court and testify in your

18   presence, and your lawyer could cross-examine the government's

19   witnesses and object to evidence offered by the government.  Do

20   you understand that?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  At trial, you would also have the

23   opportunity to offer evidence on your own behalf if you wished

24   to do so, and you would have the right to compel witnesses to

25   come to court to testify in your defense.  Do you understand

H7JQLEWp

1    that?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  At a trial, you would have the right to

4    testify if you chose to do so, but you would also have the

5    right not to testify; and if you decided not to testify, no

6    one, including the jury, could draw any inference or suggestion

7    of guilt from the fact that you did not testify.  Do you

8    understand that?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Do you understand, Mr. Lewis, that by

11   pleading guilty, you are giving up your right to seek

12   suppression or exclusion from any evidence against you that the

13   government may have obtained improperly?

14           THE DEFENDANT:  Yes, sir.

15           THE COURT:  If you were convicted at a trial, you

16   would have the right to appeal that verdict.  Do you understand

17   that?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  Even now, Mr. Lewis, as you are entering

20   this plea, you have the right to change your mind and plead not

21   guilty and go to trial on the charge against you contained in

22   the indictment.  Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  If you plead guilty, Mr. Lewis, you will

25   also give up your right not to incriminate yourself.  I say

H7JQLEWp

1    that because I will ask you questions later during this

2    proceeding about what you did in order to satisfy myself that

3    you are guilty as charged, and you will have to admit and

4    acknowledge your guilt.  Do you understand that?

5            THE DEFENDANT:  Yes, sir.

6            THE COURT:  If you plead guilty, Mr. Lewis, and if I

7    accept your plea, you will give up your right to a trial and

8    all the other rights that we have just discussed other than

9    your right to a lawyer which you have regardless of whether or

10   not you plead guilty.  But there will be no trial, and I will

11   enter a judgment of guilty and sentence on the basis of your

12   plea.

13           There will be no appeal with respect to whether the

14   government could use the evidence that it has against you or

15   with respect to whether you did or did not commit this crime.

16   Do you understand that?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Thank you.

19           Mr. Lewis, we've just discussed a number of important

20   rights that you have.  Do you understand each and every one of

21   those rights?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And are you willing to give up your right

24   to a trial and the other rights that I've just discussed with

25   you?

H7JQLEWp

1                 THE DEFENDANT:  Yes, sir.

2                 THE COURT:  Thank you.

3            Mr. Lewis, I understand that you've received a copy of

4      the indictment containing the charge against you.  Can I ask,

5      have you read the indictment?

6                 THE DEFENDANT:  Yes.  Yes, sir.

7                 THE COURT:  Thank you.

8            Do you understand that in the indictment you are

9      charged with conspiracy to distribute and possess with intent

10     to distribute 280 grams or more of mixtures and substances

11     containing a detectable amount of cocaine base; that is, crack,

12     in connection with participation in a narcotics conspiracy from

13     in or about 2008 up to and including in or about 2016 in

14     violation of 21 U.S.C. Section 846.  Do you understand that's

15     the charge against you?

16                THE DEFENDANT:  Yes, sir.

17                THE COURT:  Do you understand that, however, pursuant

18     to your agreement with the United States, you are pleading

19     guilty to the lesser included offense of conspiracy to

20     distribute and possess with intent to distribute mixtures and

21     substances containing a detectable amount of cocaine base in

22     connection with participation in a narcotics conspiracy from in

23     or about 2008 up to and including in or about 2016 in violation

24     of 21 U.S.C. Sections 841(b)(1)(C) and 846.  Do you understand

25     that?

H7JQLEWp

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Thank you.

3            Mr. Swergold, can I ask you to please state the

4    elements of the offense in question.

5            MR. SWERGOLD:  Yes, your Honor.

6            The elements of the lesser included offense in Count

7    One are as follows:

8            First, that two or more persons agreed or conspired to

9    distribute or possess with the intent to distribute one or more

10   controlled substances; specifically, in this case a quantity of

11   mixtures and substances containing a detectable amount of

12   cocaine base commonly referred to as crack cocaine.

13           Second, that the defendant was party to or a member of

14   the agreement or conspiracy.

15           Third, that the defendant joined the agreement or

16   conspiracy knowing of its objective and intended to join

17   together with at least one other alleged conspirator to achieve

18   that objective.

19           The government would also prove that venue is proper

20   in the Southern District of New York by a preponderance of the

21   evidence.

22           THE COURT:  Thank you.

23           Mr. Lewis, do you understand that if you are to go to

24   trial for this offense, that the government would have to prove

25   all of the elements of the offense beyond a reasonable doubt?

H7JQLEWp

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  Thank you.

3        Now, I'm going to tell you the maximum possible

4   penalty for the crime to which you are pleading guilty.  The

5   maximum means the most that could possibly be imposed.  It does

6   not mean that it is what you will necessarily receive; but you

7   have to understand that by pleading guilty, you are exposing

8   yourself to the possibility of receiving any combination of

9   punishments or penalties up to the maximum that I am about to

10  describe.  Do you understand that?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  First, I'm going to tell you about the

13  possible restrictions on your liberty.

14       The maximum term of imprisonment for this crime is 20

15  years, which could be followed by up to a lifetime term of

16  supervised release.  If you are sentenced to a term of

17  supervised release, you will be subject to supervision by the

18  probation office.  There will be rules of supervised release

19  that you will have to follow; and if you violate those rules,

20  you can be returned to prison without a jury trial to serve

21  additional time with no credit for time that you served in

22  prison as a result of your sentence and no time spent on post

23  release supervision.

24       You should understand, Mr. Lewis, that there is no

25  parole in the federal system; and that if you are sentenced to

H7JQLEWp

prison, you will not be released early on parole.  Do you

understand that?

          THE DEFENDANT:  Yes, sir.

          THE COURT:  Thank you.

          Second, in addition to these restrictions on your

liberty, the maximum possible punishment also includes certain

financial penalties.  The maximum allowable fine is $1 million,

or twice the gross monetary gain derived from the offense, or

twice the gross monetary loss to persons other than yourself,

whichever is greater.

          In addition, I can order restitution to any person or

entity injured as a result of your criminal conduct.

          I can also order you to forfeit all property derived

from the offense or used to facilitate the offense.

          And, finally, I must also order a mandatory special

assessment of $100.

          Mr. Lewis, in addition to understanding the maximum

punishment that can be imposed, you should understand that

there is a mandatory minimum penalty that attaches to the crime

to which you are intending to plead guilty.  That means that

even if I wanted to, I would not be allowed to sentence you to

less than the minimum.

          In this case, there is no mandatory minimum sentence

of incarceration, but there is a mandatory minimum sentence of

at least three years of supervised release.

H7JQLEWp

1           Counsel, do either of you wish to correct or amend any

2     of the penalties that I've just described before I proceed?

3           MR. SWERGOLD:  No, your Honor.

4           MR. COHEN:  No, your Honor.

5           THE COURT:  Thank you.

6           Mr. Lewis, do you understand that these are the

7     maximum possible penalties?

8           THE DEFENDANT:  Yes, sir.

9           THE COURT:  And do you understand the mandatory

10    minimum sentence that applies in this case?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Thank you.

13          Mr. Lewis, do you understand that as a result of your

14    guilty plea, you may lose certain valuable civil rights to the

15    extent that you have them or could otherwise obtain them now,

16    such as the right to vote, the right to hold public office, the

17    right to serve on a jury, and the right to possess any kind of

18    firearm?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  Mr. Lewis, are you serving any other

21    sentence, either state or federal, or to your knowledge are you

22    being prosecuted in state court for a state crime?

23          THE DEFENDANT:  Serving a state sentence right now,

24    sir.

25          THE COURT:  Thank you.

H7JQLEWp

1           You should understand, Mr. Lewis, that your state and

2    federal sentences could be consecutive, so that any sentence

3    imposed in this case could be added on at the end of any other

4    sentence that you have to serve.  Do you understand that?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  Do you understand, Mr. Lewis, that if your

7    lawyer or anyone else has attempted to predict what your

8    sentence will be, that their prediction could be wrong?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Do you understand that the sentence

11   ultimately imposed may be different from any estimate that your

12   attorney may have given you?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  That's good, because no one can give you

15   an assurance of what your sentence will be because I'm going to

16   decide your sentence, and I'm not going to do that now.  Do you

17   understand that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Before I impose your sentence, Mr. Lewis,

20   I will review a presentence report that is prepared by the

21   probation department.  You and your counsel and counsel for the

22   United States will have the opportunity to challenge the facts

23   that are reported in that presentence report and also the

24   application of the advisory Sentencing Guidelines that are

25   recommended by the probation officer.  I'm obliged to do my own

H7JQLEWp

1   independent calculation of the advisory Sentencing Guidelines

2   range.

3            After your initial advisory guidelines range has been

4   determined, I have the authority in some circumstances to

5   depart upward or downward from that range.  Ultimately, I'll

6   determine what a reasonable sentence is for you based on a

7   number of sentencing factors contained in the statute found at

8   18 U.S.C. Section 3553(a).  That may result in the imposition

9   of a sentence that is either greater or lesser than the

10  advisory guidelines.

11           Do you understand all of that?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Have you and your attorney discussed how

14  the advisory Sentencing Guidelines might apply in your case?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Thank you.

17           Mr. Lewis, even if your sentence is different from

18  what your lawyer or anyone else has told you it might be, even

19  if it is different from what you expect or from what's

20  contained in a written plea agreement entered into between you

21  and the government, you will still be bound by your guilty plea

22  and will not be allowed to withdraw your plea of guilty.  Do

23  you understand that?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Thank you.

H7JQLEWp

1          Mr. Lewis, we've just discussed a number of important

2     possible consequences of your plea.  Do you understand all of

3     those possible consequences?

4               THE DEFENDANT:  Yes, sir.

5               THE COURT:  Thank you.

6          I understand that there is a written plea agreement

7     entered into between you, Mr. Lewis, and your lawyer and the

8     lawyer for the government.  Is that correct?

9               THE DEFENDANT:  Yes, sir.

10              THE COURT:  Thank you.

11         I have the original letter plea agreement dated July

12    18, 2017 to your lawyer, Mr. Cohen, from Assistant United

13    States Attorney, Jason Swergold.  I'm going to mark this as

14    Court Exhibit 1 and will provide it to the government to retain

15    in its possession.

16         I'd like to ask you some questions about the agreement

17    though before I do, Mr. Lewis.

18         Before I turn to Mr. Lewis, however, counsel,

19    Mr. Swergold and Mr. Cohen, are there material differences

20    between the July 18 final letter and the March 22 draft of that

21    letter?

22              MR. SWERGOLD:  The only difference, your Honor, is the

23    name of the narcotics unit chief who signed the plea agreement.

24              THE COURT:  Thank you.

25         So, Mr. Lewis, drawing your attention to the plea

H7JQLEWp

1    agreement, can I ask, did you sign the original of the plea

2    agreement on the last page?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Did you do that today in the presence of

5    your lawyer?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Did you read the agreement before you

8    signed it?

9            THE DEFENDANT:  Yes, sir.

10           THE COURT:  Did you discuss it with your lawyer before

11   you signed it?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Did you fully understand the agreement

14   before you signed it?

15           THE DEFENDANT:  Yes, sir.

16           THE COURT:  Thank you.

17           Now, Mr. Lewis, one of the features of your agreement

18   with the government is that you've agreed on the guideline

19   range that applies in this case.  Is that correct?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  You should know that agreement is binding

22   on you and it's binding on the government, but it's not binding

23   on me.  As I told you earlier, I have my own independent

24   obligation to determine what the correct advisory Sentencing

25   Guidelines range is in your case and what the appropriate

H7JQLEWp

1    sentence is.

2              Now, I'm not saying that I'm going to come up with any

3    range that's different from the range that's contained in your

4    plea agreement, but you need to understand that if I do, I will

5    not let you withdraw your plea even if the range that I

6    determine is higher than the one you agree to with the

7    government.  Do you understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Thank you.

10             Do you understand, Mr. Lewis, that under some

11   circumstances, you or the government may have the right to

12   appeal any sentence that I impose?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Thank you.

15             In your plea agreement, you've waived a number of

16   rights to appeal or otherwise challenge your conviction and

17   sentence.  Among other things, you've agreed not to file a

18   direct appeal or to bring a collateral challenge, including,

19   but not limited to, an application under Title 28 U.S.C.

20   Sections 2255 or 2241 or to seek a sentence modification

21   pursuant to Title 18 U.S.C., Section 3582(c) of any sentence

22   that's within or below the stipulated guidelines range of 151

23   to 188 months imprisonment.

24             You have also agreed not to appeal any term of

25   supervised release that is less than or equal to the statutory

H7JQLEWp

maximum, and you've also agreed not to appeal any fine that is

less than or equal to $1 million.

       Furthermore, you've agreed not to appeal your

conviction or sentence or attack it collaterally on the basis

that the government has failed to produce any discovery

material, Jencks Act material, exculpatory material pursuant to

*Brady v. Maryland* other than information establishing the

factual innocence of the defendant, and impeachment material

pursuant to *Giglio v. United States* that has not already been

produced as of the date of the agreement.

       Furthermore, although I understand that you are a

United States citizen, you've agreed not to appeal your

conviction or to challenge it collaterally on the basis of any

actual or perceived adverse immigration consequences.

       So, Mr. Lewis, do you understand the rights to appeal

or challenge your conviction and sentence that you've waived in

your plea agreement?

       THE DEFENDANT:  Yes, sir.

       THE COURT:  Mr. Lewis, does this written plea

agreement constitute your complete and total understanding of

the entire agreement between you and the government?

       THE DEFENDANT:  Yes, sir.

       THE COURT:  Has anything been left out?

       THE DEFENDANT:  No, sir.

       THE COURT:  Other than what's written in this

H7JQLEWp

1  agreement, has anyone made any promise to you or offered you

2  any inducements to plead guilty or to sign the plea agreement?

3          THE DEFENDANT:  No, sir.

4          THE COURT:  Has anyone threatened you or forced you to

5  sign the plea agreement or plead guilty?

6          THE DEFENDANT:  No, sir.

7          THE COURT:  Has anyone made a promise to you as to

8  what your sentence will be?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  Thank you.

11          Mr. Lewis, I told you earlier that I would turn to you

12  during this proceeding to ask you to tell me what it is that

13  you did that makes you believe that you are guilty of the

14  offense to which you intend to plead guilty.

15          Can you please tell me what it is that you did that

16  makes you believe you are guilty of this offense.

17          THE DEFENDANT:  Yes, sir.  From 2008 to the date of my

18  arrest, I agreed with others to distribute and possess with the

19  intent to distribute cocaine base, and on or about October 2009

20  I sold cocaine base to another person.  This occurred in

21  Manhattan.

22          THE COURT:  Thank you.

23          Mr. Lewis, when you did those things, did you know

24  what you were doing was wrong and illegal?

25          THE DEFENDANT:  Yes, sir.

H7JQLEWp

1            THE COURT:  Thank you.

2            Mr. Cohen, do you know of any valid defense that would

3    prevail at trial or do you know of any reason why your client

4    should not be permitted to plead guilty?

5            MR. COHEN:  No, your Honor.

6            THE COURT:  Thank you.

7            Mr. Swergold, are there any additional questions that

8    you'd like me to ask Mr. Lewis?

9            MR. SWERGOLD:  No, your Honor.

10           THE COURT:  Thank you.

11           Mr. Swergold and Mr. Cohen, do both of you believe

12   that there is a sufficient factual predicate for a guilty plea?

13           MR. SWERGOLD:  Yes, your Honor.

14           MR. COHEN:  Yes, your Honor.

15           THE COURT:  Thank you.

16           Do either of you know of any reason that I should not

17   accept the defendant's plea of guilty?

18           MR. SWERGOLD:  No, your Honor.

19           MR. COHEN:  No, your Honor.

20           THE COURT:  Thank you very much.

21           Can I ask you to please stand now, Mr. Lewis.  Thank

22   you.

23           (Complies)

24           THE COURT:  Mr. Lewis, as we discussed, Count One

25   charges you with conspiracy to distribute and possess with

H7JQLEWp

1    intent to distribute 280 grams or more of mixtures and

2    substances containing a detectable amount of cocaine base in

3    connection with participation in a narcotics conspiracy from in

4    or about 2008 to up to and including in or about 2016, in

5    violation of 21 U.S.C., Section 846.

6         I understand that you wish to plead guilty to the

7    lesser included offense of conspiracy to distribute and possess

8    with intent to distribute mixtures and substances containing a

9    detectable amount of cocaine base; that is, crack in connection

10   with participation in a narcotics conspiracy from in or about

11   2008 to up to and including in or about 2016 in violation of 21

12   U.S.C., Section 841(b)(1)(C) and 846.

13        How do you plead to that offense?

14        THE DEFENDANT:  Guilty.

15        THE COURT:  Thank you.

16        Mr. Lewis, there's a forfeiture allegation with

17   respect to Count One of the indictment.  Do you admit the

18   forfeiture allegations with respect to Count One of the

19   indictment?

20        (Defendant consults with counsel)

21        THE DEFENDANT:  Yes.

22        THE COURT:  Thank you.  It is the finding of the Court

23   in this case that Mr. Lewis is fully competent and capable of

24   entering an informed plea; that Mr. Lewis is aware of the

25   nature of the charges and the consequences of the plea; and

H7JQLEWp

1    that the plea of guilty is a knowing and voluntary plea

2    supported by an independent basis in fact containing each of

3    the essential elements of the offense.

4           The plea is, therefore, accepted, and Mr. Lewis is now

5    adjudged guilty of that offense.

6           Thank you very much, Mr. Lewis.  You can be seated.

7    Thank you.

8           So, Mr. Lewis, the probation department will want to

9    interview you in connection with a presentence report that I

10   will prepare.

11          Mr. Cohen, do you wish to be present for any interview

12   in connection with that report?

13          MR. COHEN:  Yes, I do, your Honor.

14          Before you set a sentencing date, I'd like to say a

15   word.

16          THE COURT:  Thank you.

17          I will order that no interview take place unless

18   counsel is present.

19          I am going to direct that the United States provide

20   the probation officer with its factual statement within seven

21   days.

22          Defense counsel, please arrange for Mr. Lewis to be

23   interviewed by the probation department within the next 14

24   days.  We'll notify them that a PSR needs to be prepared.

25          Mr. Lewis, if you choose to speak to the probation

H7JQLEWp

1  department, please make sure that anything you choose to say is

2  truthful and accurate.  A presentence report is a very

3  important document for me in deciding what the appropriate

4  sentence is.  It's a document that I read and will read very

5  carefully.

6       I pause on this point briefly because you and your

7  counsel have the right to review that report and to comment on

8  it both before and at sentencing.  So I want to urge you to

9  take advantage of that right and to review the report, and let

10  your counsel know if there are any errors in it or other issues

11  with it so that he can bring them to the attention of the

12  probation officer who's preparing the report, and ultimately

13  bring them to my attention at or about sentence.

14       Thank you.

15       So with that, Mr. Cohen, proceed.

16       MR. COHEN:  Yes.  For several reasons, your Honor, we

17  ask that you order an expedited sentence, hopefully sometime in

18  the second or third week of September, if possible.

19       The major reason is that Mr. Lewis is presently still

20  serving his state sentence, and it may impact upon the credit

21  he gets in connection with this case; and in order to expedite

22  it, your Honor, I will be away for a significant time in

23  August.  I would also ask that your Honor allow me to use the

24  services of a mitigation expert that has previously been

25  appointed by other courts in this jurisdiction.  If you say

H7JQLEWp

| | |
|---|---|
| 1 | that you will allow that, I will prepare the appropriate -- I |
| 2 | will send you a letter or prepare one to that effect. |
| 3 | THE COURT:  Thank you. |
| 4 | Let me address each of those requests in turn. |
| 5 | On the first request, I'd like to hear the view of the |
| 6 | United States.  Is there a request for an expedited sentencing? |
| 7 | MR. SWERGOLD:  Your Honor, I think that -- so the |
| 8 | first point that I would make is I believe that the defendant |
| 9 | is currently serving time in the state not for relevant conduct |
| 10 | in this case, and so I don't know what to extent it will have |
| 11 | an effect on his sentencing here.  I don't believe it would |
| 12 | have any sort of mandatory effect under the guidelines. |
| 13 | It sounds like if there's going to be a mitigation |
| 14 | expert, that it might take a little longer to prepare for |
| 15 | sentencing anyway.  It sounds like the government will have to |
| 16 | review a mitigation report that's prepared.  That being said, |
| 17 | the government is perfectly willing to go along with whatever |
| 18 | schedule the Court thinks is appropriate in light of the facts |
| 19 | that Mr. Cohen has just raised. |
| 20 | THE COURT:  Thank you. |
| 21 | MR. COHEN:  Your Honor, if I might.  I've already |
| 22 | spoken to the expert who is prepared to start working on this |
| 23 | as soon as possible.  As I said, I'm going to be away most of |
| 24 | August, your Honor.  I think it would actually be quicker if |
| 25 | the mitigation expert were appointed. |

H7JQLEWp

1          As I said, I can't now discuss in detail or

2     intelligently all of the sentencing issues that relate to the

3     fact that Mr. Lewis is presently serving a sentence and has

4     served other sentences as well before this, but whatever issues

5     are raised will be addressed appropriately.

6          If you could set a date let's say for the week of

7     September 25, that would be good.  And if you would accept the

8     request for the appointment of the mitigation expert, we would

9     appreciate it.

10          THE COURT:  Now, let me hear more about the request

11     for an appointment of mitigation expert.  I understand that you

12     will be away for a period of the summer.

13          Beyond that, what's the basis for the appointment of a

14     mitigation expert if you can tell me in open court.

15          MR. COHEN:  This particular person, your Honor, is

16     prepared to go in depth into Mr. Lewis' background and also his

17     drug addiction problem that he's had.  He's also prepared to

18     find employment for Mr. Lewis.  And, in particular, I haven't

19     spoken to this woman yet, but this particular program that this

20     mitigation expert would be interested in having Mr. Lewis

21     participate in, so they have a certain expertise and certain

22     knowledge that I think would be very helpful to your Honor in

23     determining the appropriate sentence.

24          It would also, your Honor, since I wouldn't be doing

25     the bulk of the work necessarily, that it would save the

H7JQLEWp

1   government money because their hourly rate is less than the

2   rate of a CJA.  So I think on all those reasons, it makes a lot

3   of sense in Mr. Lewis' case to have the services of a

4   mitigation expert.

5          THE COURT:  Thank you.  I can't commit on the basis of

6   that proffer to approve the appointment of a mitigation expert.

7   I am not at this point going to deny it either.  But I would

8   want more, I will call it, justification for the appointment of

9   a mitigation expert, and I would be looking to have a clear

10  understanding of what it is that a mitigation expert would add

11  to the sentencing process beyond the work that counsel would

12  do.

13         It's not apparent to me from your proffer what

14  specifically requires a separate expert to chime in on, so I

15  can't commit at this point to appointing a mitigation expert.

16         I will allow you to submit a more detailed application

17  using the E-voucher system to support the request, but I'm not

18  going to grant the request at this time.

19         Does that make a difference for you in terms of the

20  scheduling, Mr. Cohen?

21         MR. COHEN:  No, your Honor.  I still want the sentence

22  to be expedited, so that if there is no mitigation expert, and

23  I end up doing it, as I usually do in every case, I'll make

24  sure it gets in on time so that we can expedite the sentence.

25         THE COURT:  Thank you.

H7JQLEWp

1          MR. SWERGOLD:  Your Honor, if I may, I heard Mr. Cohen

2     ask for the week of September 25.

3          THE COURT:  Yes.

4          MR. SWERGOLD:  As your Honor knows, we'll be on trial

5     at least as of now against some of the other defendants in this

6     case starting September 18, so perhaps if the Court is inclined

7     to do it that week, maybe just near the end of the week in case

8     the trial spills over.

9          THE COURT:  Thank you.

10          THE DEPUTY CLERK:  Counsel, how is Monday, October 2

11     at 2:00 p.m.

12          MR. COHEN:  That's fine.  What time?

13          THE DEPUTY CLERK:  2:00 p.m.

14          THE COURT:  Mr. Swergold, does that work for you as

15     well?

16          MR. SWERGOLD:  Yes, it does.  Thank you.  Your Honor.

17          THE COURT:  Good.  Thank you.

18          So sentencing will take place at that date and time.

19     Mr. Cohen, if you would like to make an application for

20     appointment of a mitigation expert, please do so using the

21     E-voucher system, and please include -- I think the system will

22     require you to include it, but include a memorandum in your

23     application that describes in particular the basis for the

24     appointment of a mitigation expert.

25          I'm focused, as you can tell, in part on what the

H7JQLEWp

1  marginal utility is for a mitigation expert in addition to the

2  work that you would usually do in a case such as this.  If you

3  put that in in the near future, I'm likely to see it sooner

4  than later.

5          Good.  Is there anything else that we should discuss

6  before we adjourn?

7          MR. SWERGOLD:  Not from the government.

8          THE COURT:  Thank you.

9          Mr. Cohen.

10          MR. COHEN:  No.  Thank you, your Honor.

11          THE COURT:  Good.  Thank you.  Thank you all.

12          Good afternoon, Mr. Lewis.

13          This proceeding is adjourned.

14          (Adjourned)

15

16

17

18

19

20

21

22

23

24

25