# IRVING COHEN
ATTORNEY AT LAW

(212) 964-2544
FAX (212) 406-2313
ICOHENLAW@MSN.COM

233 BROADWAY
SUITE 1800
NEW YORK, N.Y. 10279

October 2, 2017

Hon. Gregory H. Woods
United States District Court
Southern District of New York
40 Centre Street
New York, New York 10007

**Re: United States v. Kevin Lewis, 16 Cr. 396 (GHW)**

Dear Judge Woods:

      I am the attorney for Kevin Lewis, having been duly appointed pursuant to the Criminal Justice Act. Mr. Lewis pleaded guilty to Count One of this indictment on July 19, 2017. Sentencing is presently set for October 16, 2017 at 10 AM. The guilty plea was to the lesser included offense of conspiracy to distribute and possess with the intent to distribute a detectable amount of cocaine base in violation of 21 United States Code Sections 846 and 841 (b)(1)(C). There is no mandatory minimum sentence required by the statute to which he pleaded. Please accept this letter as a presentence memorandum on behalf of Mr. Lewis.

      In the context of this case in which approximately twenty-five defendants were charged, Mr. Lewis was one of the most minimally involved. Indeed, for much of the time that this conspiracy existed, Mr. Lewis was in State prison serving a sentence and had to be writted into the federal system to face these charges. In coming to an agreement with the Government, the major concern was whether Mr. Lewis qualified as a career offender. Obviously, that would impact greatly on his eventual guideline range. In the end, and due to recent Supreme Court and Second Circuit law, the agreement stipulated that Mr. Lewis was, in fact, a career offender.

      Nevertheless, it is our view that the guidelines substantially overstate the seriousness of Mr. Lewis's involvement in this case. The fact is that while serving the aforementioned State sentence, Mr. Lewis had come to terms with his prior involvement in criminal behavior and was making great strides toward his commitment to change his life in a positive direction. He availed himself of numerous programs in prison – including those that focused on self-awareness. Mr. Lewis was determined to come out of prison a "new man;" one that recognized that he had been a major disappointment to himself, his family and other loved ones. It was particularly unfortunate, therefore, that in the midst of his positive rehabilitative efforts, he was brought to federal court to face charges that emanated from a very limited period of activity that **pre-dated** the crime for which he was then serving time.

IRVING COHEN
ATTORNEY AT LAW

      Moreover, Mr. Lewis's involvement over that time span was fairly minimal – and certainly far less than the vast majority of his co-defendants. It is our view that – with a plea to a (b)(1)(C) – he should be sentenced commensurate with his actual involvement and on a par with those who share that involvement without undue consideration of his criminal past. In other words, Mr. Lewis should not be sentenced to a greater prison term than others in the case whose involvement was similar to Mr. Lewis's. This is especially appropriate since the criminal history points with which he was assessed greatly exaggerate his actual record.

      Neither of the two robbery convictions that form the basis for his status as a career offender were really classical robberies. The May 28, 2002 conviction – when he was just sixteen years old – was really a fight between adolescents that came about because Mr. Lewis had won a bet from the complainant on a basketball court. When that young man did not pay Mr. Lewis, the two started to fight. And the conviction of August 19, 2015 arose when Mr. Lewis was a passenger in a taxicab. He fell asleep and when he was awakened by the cabdriver, he was not at the location he had told the driver. Foolishly, Mr. Lewis told the driver that, since he was not being dropped off at the right location, he was not going to pay him and started to leave. The cabdriver said he would call the police and took out his cellphone. In another foolish move, Mr. Lewis smacked the hand holding the phone – which dropped on the ground - and ran away. He never intended to take the cellphone but was simply trying to delay the driver from calling the police so he could get away. It was the sentence on this conviction that Mr. Lewis was serving when he was brought down from State prison to answer the charges in the instant case.

      It is clear, therefore, that Mr. Lewis has been in custody since August 2, 2015 when he was arrested on the latter robbery charge. Yet, the conspiracy herein continued for over another year until the indictment was filed during the summer of 2016. By that time, Mr. Lewis had committed himself to changing his life and demonstrated that commitment by involving himself in courses and activities that would serve him well when released. In State prison, Mr. Lewis participated in "ART," an anger management program; he passed the test in the Adult Basic Education class and then was enrolled in the pre-GED program but could not complete it and obtain his GED because he was removed to this Court. Mr. Lewis also voluntarily participated in both the Alcoholics and Narcotics Anonymous meetings. During all the time he was serving his sentence – and, indeed, while he has been at the MCC – Mr. Lewis did not receive one "ticket" regarding his behavior inside. In fact, when he was released to commence three years of supervision after his prior state court sentence, he was discharged after only one year as a result of his good behavior.

      As indicated, while at the Metropolitan Correctional Center for the last year, Mr. Lewis has continued the efforts that he started in State prison to reform his life. He has primarily been working with Antonio Hendrickson, the founder and CEO of "Lead by Example/Reverse the Trend." Included herewith is a certificate of completion from this program. In Mr. Hendrickson's two letters to the Court, appended to this memorandum, he describes the nature of the programs he administers and, in particular, how beneficial they have been and will continue to be to Mr. Lewis.

IRVING COHEN
ATTORNEY AT LAW

In the first letter, Mr. Hendrickson writes, inter alia, that the program provides "a means to promote reform and restoration," toward "cognitive self-change." As he says, "we act as reentry specialists for young adult detainees who are at a crossroads and reentering society providing for them a fresh start…" Once Mr. Lewis learned of the program, he knew that it would foster and accelerate the progress he had been making in State prison to reenter society with an entirely different mind-set. Mr. Hendrickson recognized, as well, that Mr. Lewis was the perfect candidate - one who would definitely take advantage of the resources that the program would continue to provide. It is important to note that this type of caring and encouragement is much more effective when it comes from those who have had similar experiences and are now in a position to lead the way.

In his second letter, Mr. Hendrickson describes how the program will function for Mr. Lewis specifically. "…Kevin will have 24 hour access to lead mentors, who identify with his circumstances as all our mentors are "credible messengers" who have faced similar circumstances." Mr. Lewis would receive "one-on-one counseling, academic/educational support if necessary, job readiness, job training, social emotional learning/development and other services pertaining to his needs and interests."

In addition to his involvement with "Lead by Example/Reverse the Trend," Mr. Lewis engaged himself in other self-awareness courses at the MCC. Included herewith are certificates from the "Drug Abuse Education Course," the "Non-residential Drug Treatment Program," and the "Adult Continuing Education Program in Black History." Also included is his transcript from the "Inmate Education Office," at the MCC.

There is no question that Mr. Lewis has the dedication and wherewithal to change his life in this manner – especially with the help of "Lead by Example/Reverse the Trend" and the critical support of his loved ones. In the letters which they have written to Your Honor – and in his own letter – it becomes clear that Mr. Lewis is a bright person who never had the experience of being in a serious educational situation to take advantage of his intelligence. Mr. Lewis is also a sensitive and caring person who is totally aware that he is, indeed, as indicated, at the crossroads of his life. For sure, he knew as much when he began his State prison sentence – when he promised himself that he was through with a life of crime. As the letters indicate, Mr. Lewis had a lot going for him – and still does. Mr. Lewis has the personality, intelligence and perseverance to go forward in a positive direction. He was on his way – and looking forward to his release from State prison – so he could prove to himself, his loved ones and society that his past would no longer be his future.

In his candid letter to Your Honor, Mr. Lewis tells you, as indicated, that while incarcerated he has come to terms with his admittedly criminal conduct and has been "focusing on self-improvement." His willingness to be a part of Mr. Hendrickson's program, as well as all the other courses and programs he has taken advantage of, is proof of his desire and recognition that "the key to success is a solid transitional plan." He is not simply waiting to be released and then trying to figure out what lies ahead. He is actively preparing himself for a future that involves meaningful employment and positive social interactions and relationships. "I will spend

IRVING COHEN
ATTORNEY AT LAW

the duration of my sentence gaining academic certification. I will also be studying my options as far as re-entry programs."

The letters that accompany this memorandum describe the difficult circumstances of Mr. Lewis's youth while at the same time providing the Court with the flavor of the real person he is. One wonders what his life would have been like had his brother Darnell not been killed by a hit-and-run driver; had his father not dealt with that tragedy by turning to alcohol and drugs; had Mr. Lewis not been in foster homes subjected to "sexual, physical, emotional mistreatment," as described by his mother, Lucinda Lewis. Particularly poignant is Ms. Lewis's observation that "...my son never got to heal in a tormented life of skeletons."

Through all this time, however, Mr. Lewis has been a kind and decent person sensitive to other people's needs. He has known Marcella Watt for fifteen years and, after dating when teenagers, reconnected and are committed to each other. She writes that he has always been there for her and her family, "willing to lend a hand with everything from fixing a car to helping me study for tests in school." From her words, one can tell that Ms. Watt is a bright and articulate person – but one, as well, that would not have stayed with Mr. Lewis for so long if he were not, at bottom, a decent, caring person. She also confirms how much he has done to learn and better himself while in prison. "To this day, Kevin continues to do all that is in his power to become more self-aware and in control of his actions and reactions." These observations are echoed by Jennifer Pesante, a friend, and Pastor Andre Faison who has only good things to say about Mr. Lewis describing him as a "fine young man," who "seeks to be successful in life," as he learns "from any mistakes he has made..."

Most important to Mr. Lewis is his relationship with his daughter, Bryanna, who turned seven on September 21st. Her mother, Priscilla Turner, and Mr. Lewis have maintained a cordial and supportive arrangement through the years to insure that Bryanna has a solid and meaningful relationship with her father. In her letter to Your Honor, Ms. Turner describes Mr. Lewis as a "sensitive and caring person" who "does accept his mistakes." Echoing his own remarks and the strides he has made over the last several years, Ms. Turner has "noticed that Kevin has made a positive transition in the way he talks, the way he expresses himself, and especially the way he interacts with Bryanna." Indeed, Bryanna regularly visits Mr. Lewis at the MCC. She knows of his situation and misses him intensely. They are very close. There is simply no way Mr. Lewis would do anything in the future to jeopardize that relationship with his daughter. To be remembered is that Mr. Lewis was eligible to be released as early as this year from State prison as a result of his outstanding record while serving that sentence. Needless to say, Bryanna – and his entire family – were disappointed when, in the middle of his sentence, he was brought to federal court to answer for these older charges.

On this point, I would like to note that Mr. Lewis was sentenced to five years in State prison as a result of drug charges emanating from his actions in 2009 and 2010. It is agreed that his criminal activity back then was part of the conspiracy charged in this case – in other words, relevant conduct. That is why he has not been assessed any criminal history points in connection with that sentence. Therefore, whatever sentence Your Honor imposes herein should be affected

IRVING COHEN
ATTORNEY AT LAW

— and, indeed, reduced - by the three-and-one-half years Mr. Lewis served as a result of that conviction in State court.

I have engaged in criminal defense work for close to fifty years. Given the types of people I have represented and aware of the often heinous crimes that some of them have committed, I am always struck by the complexity of the human condition. Individuals are rarely, if ever, one-dimensional. I have tried herein to give Your Honor a portrait of Mr. Lewis that presents him as a human being who has struggled through adversity, who has made seriously bad choices, but who has those positive qualities that, when harnessed, will insure that his future choices will be productive and not destructive. In my many deep talks with him over the last year, I have tried to gauge the apparent seriousness of his attempts to turn his life around. Clearly, while in State prison and then at the MCC, the objective proof of that seriousness is a given. It is extremely unfortunate that the steps Mr. Lewis took in State prison were interrupted by the indictment in this federal case based upon a short period of drug sale involvement that pre-dated his state sentence. Be that as it may, I do not believe that this Court would be taking a great risk in fashioning a sentence that would permit Mr. Lewis's release within a short time.

Just about every defendant in this case was much more heavily involved in drug traffic than Mr. Lewis. Indeed, some of them operated for years rather than weeks. Your Honor has sentenced some of them already. These sentences have ranged from 90 months down to as little as 18 months. While the Probation Office has recommended a non-guideline sentence of 91 months, such a sentence would nevertheless still be greater than any other sentenced defendant – including those who, it is understood, were long-time traffickers and wholesale suppliers. Considering Mr. Lewis's comparatively less involvement – and his sincere desire and documented attempts to live a crime-free life in the future with Ms. Watt and his daughter - I urge the Court to sentence Mr. Lewis more in line with the others you have sentenced who were at the same level as Mr. Lewis.

I have been presented by Mr. Lewis with a comprehensive list of over 130 companies that hire felons and ex-convicts. It is simply one more indication that he is deadly serious about learning a trade – or gaining an education – so that he can become a productive member of the workforce. This is part of his dedicated preparation – taking classes, participating in all available programs – that documents and establishes his aim to leave that part of his life that brought him into this court completely behind him. Mr. Lewis wants to be a good husband and a positive role model for his daughter. He knows if he works hard, he will be proud of his accomplishments. I ask Your Honor to give him the opportunity to do so. His technical status as a career offender – in the face of his short term involvement in this conspiracy - should not be such an impediment to one who has, for the last several years, demonstrated a desire – indeed, a need – to better himself.

Thank you for your attention and consideration.

Very truly yours,
IRVING COHEN