Hai6lews

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                     16 CR 396(GHW)

KEVIN LEWIS,

          Defendant.

------------------------------x

                             New York, N.Y.
                             October 18, 2017
                             2:10 p.m.


Before:

              HON. GREGORY H. WOODS,

                             District Judge


                   APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
AMANDA L. HOULE
     Assistant United States Attorney

IRVING COHEN, ESQ.
     Attorney for Defendant

Hai6lews

1          (In open court; case called)

2          MS. HOULE:  Good afternoon, your Honor.  Amanda Houle

3    for government.

4          THE COURT:  Thank you very much.  Good afternoon.

5          MR. COHEN:  Good afternoon, your Honor.  Irving Cohen

6    appearing for Mr. Lewis.

7          THE COURT:  Thank you very much.  Good afternoon.

8          we're here to conduct a sentencing hearing for Kevin

9    Lewis.  I have received and following materials with this

10   sentencing:  First, the presentence report which is dated

11   September 20th, 2017; second, the defendant's sentencing

12   memorandum dated October 2, 2017 together with its exhibits;

13   third, the government's sentencing memorandum, which is dated

14   October 16, 2017; and fourth, the defendant's supplemental

15   sentencing letter, which is dated October 17th, 2017.

16         Have each of the parties received all of those

17   materials?

18         MS. HOULE:  Yes, your Honor.

19         MR. COHEN:  Yes, your Honor.

20         THE COURT:  Thank you.

21         Have the sentencing memoranda been filed with the

22   Clerk of Court?

23         MS. HOULE:  Yes, your Honor.

24         MR. COHEN:  Yes, they have, your Honor.

25         THE COURT:  Are there any other submissions in

Hai6lews

1    connection with this sentencing?

2                MS. HOULE:  Nothing from the government.

3                MR. COHEN:  None from the defendant.

4                THE COURT:  Thank you.

5          Mr. Cohen, can I turn to you please.  Have you read

6    the presentence report?

7                MR. COHEN:  Of course.

8                THE COURT:  Have you discussed it with your client?

9                MR. COHEN:  Yes.

10               THE COURT:  Mr. Lewis, have you read the presentence

11   report?

12               THE DEFENDANT:  Yes, sir.

13               THE COURT:  Have you discussed it with your counsel?

14               MR. COHEN:  Yes, sir.

15               THE COURT:  Have you had the opportunity to review

16   with your counsel any errors in the presentence report or any

17   other issues that should be addressed by the Court?

18               THE DEFENDANT:  Yes, sir.

19               THE COURT:  Ms. Houle, have you read the presentence

20   report?

21               MS. HOULE:  Yes, your Honor.

22               THE COURT:  To do you have any objections related to

23   the factual accuracy of the presentence report?

24               MS. HOULE:  No, your Honor.

25               THE COURT:  Mr. Cohen, do you have any objections

Hai6lews

1    related to the factual accuracy of the presentence report?

2              MR. COHEN:  No, your Honor.

3              THE COURT:  Thank you.

4         Given that there are no objections to the factual

5    recitations in the presentence report, the Court adopts the

6    factual recitations in the presentence report.  The presentence

7    report will be made a part of the record in this matter and

8    will be placed under seal.  If an appeal is taken, counsel on

9    appeal may have access to the sealed report without further

10   application to the Court.

11        Now, although district courts are no longer required

12   to follow the sentencing guidelines, we are still required to

13   consider the applicable guidelines in imposing sentence.  To do

14   so it is necessary that we accurately calculate the sentencing

15   range.  In this case Mr. Lewis has pled guilty to a lesser

16   included offense within Count One of the indictment in this

17   case.  The defendant pleaded guilty to the offense of

18   conspiracy to distribute and to possess with intent to

19   distribute mixtures and substances containing a detectable

20   amount of cocaine base in violation of 21, U.S.C., 846.

21        Ms. Houle, does the government agree that a two-level

22   adjustment is appropriate here under Section 3D1.1(a)?

23             MS. HOULE:  Yes, your Honor.

24             THE COURT:  Thank you.

25        Is the United States moving for an additional

Hai6lews

1    one-level adjustment under Section 3E1.1(b)?

2              MS. HOULE:  Yes, your Honor.

3              THE COURT:  I calculate the sentencing guidelines in a

4    manner that is consistent with the plea agreement in the

5    presentence report.  The applicable sentencing guidelines

6    manual is the November 1st, 2016 Sentencing Guidelines Manual.

7    The base offense level is determined pursuant Section 2D1.1.

8    Pursuant to 2D1.1(a)(5) and (c)(7) because the offense involved

9    at least 112 but less than 196 grams of cocaine base, the base

10   offense level is 26.  Because a dangerous weapon was possessed

11   during the offense, two offense levels are added pursuant to

12   Section 2D1.1(b)(1).  This yields an adjusted offense level of

13   28.

14             However, because the defendant was at least 18 years

15   old at the time of the instant offense, the instant offense is

16   a felony, that is, a controlled offense and the defendant has

17   two prior felony convictions of either a crime of violence or

18   controlled substance offense, specifically a May 2008

19   conviction for attempted robbery in the second degree, an

20   August 2015 conviction for attempted robbery in the third

21   degree as described in the presentence report.  The defendant

22   is a career offender.  Pursuant to Section 4B1.1(b), the base

23   offense level for this offense is 32 and because the statute

24   for maximum term of imprisonment is 20 years or more but less

25   than 25 years.

Hai6lews

1    Because the defendant has acceptance of responsibility

2    for his offense through his plea allocution, I apply a

3    two-level reduction pursuant to Section 3E1.1(a).  Upon motion

4    by the government, an additional one-level reduction is

5    warranted under Section 3E1.1(b).  As a result the applicable

6    guidelines offense level is 29.  But the defendant has 13

7    criminal history points resulting from nine prior convictions

8    during the relevant time period and because Mr. Lewis's

9    criminal history is extensive, I will not resite each of his

10   convictions that yield criminal history points.  Instead, I

11   adopt the description of Mr. Lewis's criminal history included

12   in pages 12 to 18 of the presentence report.

13   I will note a few things here.  First, Mr. Lewis's

14   convictions span his entire adult life from a youthful

15   adjudication in 2001 to his August 2015 conviction for

16   attempted robbery.  Second, while only nine of Mr. Lewis's

17   convictions yielded criminal history points, he was convicted

18   as an adult 15 times during that span in addition to his

19   juvenile adjudication.  Third, I note that as stated in the

20   presentence report, the calculation of Mr. Lewis's criminal

21   history points calculated a maximum of four points under

22   Section 4A1.1(c).  Both because the defendant has 13 criminal

23   history points and because he is a career offender under

24   Section 4B1.1(d), he is in criminal history category six.

25   I have considered whether there is an appropriate

1    basis for departure from the advisory range within the

2    guidelines system.  In this case, I concluded that it appears

3    there is a basis to depart pursuant to Section 5K2.23.  In

4    particular, Mr. Lewis has been convicted for conduct that is

5    relevant conduct for purposes of this sentencing.  In

6    particular Mr. Lewis was convicted on June 29, 2010 for two

7    separate offenses.  The 2009 charged an attempted criminal sale

8    of a controlled substance in the third degree and a 2010 charge

9    of attempted criminal possession of a controlled substance.

10   According to the presentence report, Mr. Lewis served

11   concurrent terms for these offenses and was released on

12   July 14, 2013.  I intend to sentence Mr. Lewis in a way that

13   takes into account those months of service for offenses that

14   constitute relevant conduct under 5K2.23.

15           Let me ask one question about his prior term of

16   service.  Mr. Cohen, your submission states that Mr. Lewis

17   spent three and a half years in prison as a result of those

18   offenses.  The PSR was not completely clear about the date of

19   incarceration.

20           What is your information?

21           MR. COHEN:  Yes, your Honor.  He received a five-year

22   sentence.  There were two sentences that were running

23   concurrently, two separate charges.  He pled guilty and

24   received a five-year total cumulative sentence and he served

25   three and a half years of that five-year sentence and then was

1    released.  It is called postrelease supervision in state court.

2           THE COURT:  So 42 months; is that your information?

3           THE DEFENDANT:  Yes, sir.

4           MR. COHEN:  Yes, sir.

5           THE COURT:  That is because he is incarcerated for

6    some period of time before his guilty plea?

7           MR. COHEN:  Yes.  I don't believe he made bail.

8           THE DEFENDANT:  I made bail in '09.  2009 I made bail

9    in that case.  That is how I got 2009 and 2010.  I made bail.

10           MR. COHEN:  He did make bail.  So he got sentenced and

11    then he went in and started serving that sentence.

12           THE COURT:  Thank you.

13           Why do you say then that he served three and a half

14    years?

15           MR. COHEN:  Well, you are eligible under the Court

16    state system --

17           THE COURT:  Let me focus you here.  He was convicted

18    on July 29, 2010.  He was released on July 14, 2013.  So that

19    is two weeks more than three years, not three and a half years.

20    So many question is why do you say he served three and a half

21    years if he was not incarcerated prior to the date of his

22    conviction?

23           (Pause)

24           MR. COHEN:  What I have been told, your Honor, and I

25    think it is correct is that on the first case he did about five

Hai6lews

1    days and was bailed out.  Several months later he was arrested

2    on the second charge and then he stayed in.  So that is where

3    the extra time comes in.  He did another about four or five

4    months.

5             THE COURT:  I understand.  Thank you.

6             Is that information consistent with the government's

7    information, Ms. Houle, that the defendant served approximately

8    42 months in connection with the other offenses that constitute

9    relevant conduct?

10            MS. HOULE:  Your Honor, I don't have any information

11   to contradict the representations by counsel.  It does appear

12   from his rap sheet he was kept in from the January 5th, 2010

13   arrest.

14            THE COURT:  Thank you.

15            MS. HOULE:  Your Honor, if I may make one point

16   regarding guideline.  Just for record in terms the convictions

17   that serve as the basis for career offender designation, your

18   Honor noted the August 19th, 2015 conviction as well as the

19   May 28th conviction and I just wanted to clarify that the

20   May 28th conviction, the year is 2002.

21            THE COURT:  Thank you for that correction, Ms. Houle.

22            Now, apart from the departure that I just described

23   under Section 5K2.23, I don't find any other grounds that

24   warrant departure under the guidelines.  In sum, I find that

25   the offense level is 29 and that the defendant's criminal

Hai6lews

1  history category is six.  Therefore, the guidelines range in

2  this matter is 151 to 188 months of imprisonment.  As I said,

3  however, believe a basis exist to depart from the guidelines

4  pursuant to is Section 5K2.23.

5          Does either party have any objections to the sentence

6  guideline calculation?

7          MR. COHEN:  No, your Honor.

8          MS. HOULE:  May I have one moment, your Honor?

9          THE COURT:  Please take your time.

10         (Pause)

11         MS. HOULE:  Your Honor, can I clarify the guideline

12  section for the departure by 5k2.--

13         THE COURT:  23.

14         MS. HOULE:  I am sorry.  I misheard.

15         THE COURT:  That's fine.

16         MS. HOULE:  Understood, your Honor, 5K2.23.

17         No objection, your Honor.

18         THE COURT:  Mr. Cohen, do you wish to be heard with

19  respect to sentencing?

20         MR. COHEN:  I do, your Honor.

21         THE COURT:  Please proceed.

22         MR. COHEN:  I will be fairly brief because obviously

23  we submitted two sentencing letters to your Honor to be

24  accepted as a memoranda.  First thing I want to say I would

25  like to take a little responsibility.  The government points

Hai6lews

out in their letter that it looks like Mr. Lewis is only

claiming that he sold a few times.  That is not the case.  He

has taken full responsibility.  It did not come out right the

way he put it in his letter.  I should have dealt with it

earlier.  When I got the government's letter, I could not see

him because I got it Monday night or late Monday afternoon.  I

attempted to see him this morning earlier, but he was not

produced in time.  So I saw him for a few minutes here.  He

confirmed pretty much that what I understood to be the

situation and that is that he takes full responsibility.

He is not suggesting that these were the only sales he

made obviously.  He was trying to express two things.  One was

that these sales denoted in this case to the undercover for

which he was charged were fairly small resulting in very small

profits so he was trying to point out how much he actually made

in these sales, which was fairly minor.  Number two, he also

indicated and maybe it didn't come out clearly enough, he

didn't want to be held responsible for all the drugs that

everybody in this conspiracy was responsible for and all the

other drugs dealt by the other people in this case and so he

mentioned that.  I don't think he realized early on that

technically you could be held responsible for not only what you

did but also what other people in the conspiracy you were aware

of were doing.  So in the end he accepted responsibility for

between 112 and 196 grams and of course that is a lot more than

Hai6lews

1  the couple sales that were actually denoted to an undercover.

2      What also should be noted, and I think your Honor has

3  referred to this already, is that he served three and a half

4  years from a state court case that actually involved drugs that

5  were part of this conspiracy.  Obviously he got out and he did

6  some more, but this goes back a long way.  He was actually

7  severing that sentence and a later one during the latter time

8  periods of this conspiracy existence.

9      Now, the fact is that Mr. Lewis while he is serving

10 the sentence that he is presently serving in state court for

11 which he was taken to answer these charges and some of those

12 charges included the time he already did on the case three and

13 a half years, he took advantage of every single program that he

14 could while in state prison.  He had no idea that this case was

15 coming done the line.  He believed he was going to be released

16 within a year and a half, at the most two years, when he was

17 pulled from state prison and brought here in the summer of 2016

18 to answer these charges.  He was looking forward to being

19 released back into society with a new outlook and new

20 opportunities.  As you see from the documents that we provided,

21 there were programs that he took advantage of so that he could

22 prepare himself for a life in the future without anymore

23 criminal behavior.  He knew that this was it and he can't

24 continue this way.  He also had a child out there he was very

25 concerned about.  Of course he was writted in to face these

Hai6lews

1    charges and that really upset the apple cart as far as he was

2    concerned about getting back into society and conducting a

3    law-abiding life.

4          He continued while he was at the MCC in taking

5    advantage of whatever programs were available for him, not just

6    so he could show your Honor the certificates; but one of these

7    programs particularly that whose director has written to you,

8    your Honor, really demonstrates to you I hope that his

9    commitment to changing his life was serious.  I would say this,

10   and I don't want to reiterate that I put in my submission, but

11   Mr. Lewis and I spent a lot of time together over the last

12   year, year and a half now and I have been doing this a pretty

13   long year, close to 50 years, and I really have been impressed

14   with everything that he says about what he wants to do and what

15   he has done.  I know I am his lawyer but I am really convinced

16   that this is the end of the line for him.  This is not the life

17   he wants to lead anymore.

18         The letters that were submitted with my memo I think

19   support the fact that he is really through.  He has this

20   program that is behind him.  It is an intriguing program

21   because it was started by ex-inmate who relates to the people

22   that are in the program.  Hendrickson is his name.

23   Mr. Hendrickson doesn't accept everybody.  He interviews and

24   determines this is a guy who I know is dedicated and who will

25   take advantage of the program we have.  It is quite extensive

1   with a different kinds of actions and activities to ensure that

2   there is a support system and there are resources that are

3   available.

4          So again I don't want to reiterate everything that I

5   put in this, but it seems to me, your Honor, that consistent

6   with his actual role here that he should get a sentence that is

7   even less than the 91 months that the Probation Department

8   recommends.  Not too often do they recommend a nonguideline

9   sentence, but they do here.  His criminal history as I have

10  indicated I think really overstates a few things, namely, his

11  involvement in this particular case.  Your Honor has sentenced

12  quite a few people already.  You know the case.  I don't have

13  to go into it all.  His actual involvement here would seem to

14  suggest a sentence that should be significantly less than the

15  91 months that the Probation Department recommends.

16         We will rest on those comments, your Honor.

17         THE COURT:  Thank you.

18         Do you have any information regarding the

19  effectiveness of the Lead by Example reversing the trend?  I

20  read the letters from Mr. Hendrickson.  I see what the goals of

21  the program are.  I have seen statements that it has been

22  effective.

23         Do you have anymore detail how effective it is?

24         MR. COHEN:  I have no details on how people have done

25  in the program; but in my speaking to Mr. Hendrickson, he told

1   me that it is working very well and he has had success with it.

2   I don't have any documental statistics, your Honor.

3          THE COURT:  Thank you.

4          Let me turn to you, Mr. Lewis.  Do you wish to make a

5   statement?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Thank you.  Please proceed however you

8   feel most comfortable.

9          THE DEFENDANT:  Good afternoon, your Honor.  I would

10  like to say that I take full responsibility of my actions as

11  far as the conspiracy.  I apologize to my unidentified victims

12  in this case and my family and loved ones.

13         Before I came to custody from state prison, I made a

14  positive transition to do right and continue to achieve my

15  goals.  I came down to the MCC stressed out, depressed and I

16  continue to progress, to move positive and think positive and

17  have good energy.  When I got to Lead by Example,

18  Mr. Hendrickson was a big brother to me because I could relate

19  to his story and I seen how successful he was after doing his

20  own program and getting guys to stand in front of people and

21  talk.

22         My daughter is seven years old.  She was born on

23  9-21-10.  Since she was born, I have been a poor, poor father

24  meaning that I have been incarcerated three times and I was a

25  kid having a kid.  Me being incarcerated is inadequate,

Hai6lews

worthless.  I cannot help my family with bills, babysit,

nothing.  I am going to get the opportunity to prepare for the

world and be a good husband to my wife, a good son to my

mother, and a wonderful father to my daughter.  I want to get

the opportunity to change to do right.  I don't have no more

room for negative energy or negative space in my life.  I would

like to close this book of my chapter and move on.

That is all I can say, sir.

THE COURT:  Thank you.

Ms. Houle, does the United States wish to be heard

with respect to sentencing?

MS. HOULE:  Briefly, your Honor.

THE COURT:  Thank you.

MS. HOULE:  I address a few points that defense

counsel has raised.  First, in connection with the description

of the defendant's participation in this conspiracy and the

extent of it, of course the defendant has served substantial

terms of incarceration within the charged time period of this

conspiracy, but he nonetheless was fully integrated in the

conspiracy's conduct.  He was selling crack on daily basis in

the Lincoln, handing out crack to others to sell at a similar

frequency and furthermore at a great concern possessing a

firearm.  The defendant has accepted responsibility for that

and that is consistent with the information from the

government's cooperating witnesses.

Hai6lews

1    The government does not agree with any assessment by

2    defense counsel that this defendant is less culpable than many

3    of the defendants that your Honor has sentenced to this point

4    despite his term of incarceration during the charged time

5    period.  That is borne out by the weight of narcotics that he

6    has accepted responsibility for as part of his participation in

7    this conspiracy and under the plea agreement.

8    As well, your Honor, despite those substantial terms

9    of incarceration, the defendant returned to the very same

10   conduct that he had been previously incarcerated for with the

11   same people and in the same place selling the same drug, and

12   that is troubling.  Defense counsel in his submission has

13   spoken extensively about the progress that Mr. Lewis has made

14   and indeed Mr. Lewis spoke very eloquently just now about that.

15   The government doesn't wish to undermine that or to discredit

16   it, but only to say that your Honor must consider that

17   information in the context of the defendant's history and his

18   extraordinary criminal history as compared to his codefendants

19   in this case.

20   Unless your Honor has any other questions, the

21   government will rest on its submission.

22   THE COURT:  Thank you very much.

23   Is there any reason why sentence should not be imposed

24   at this time?

25   MS. HOULE:  No, your Honor.

Hai6lews

           1        MR. COHEN:  No, your Honor.

           2        THE COURT:  I will now describe the sentence that I

           3   intend to impose but counsel will have the final opportunity to

           4   make legal objections before the sentence is finally imposed.

           5        As I stated the guidelines range applicable to this

           6   case is 151 to 188 months of imprisonment.  I considered the

           7   guidelines range.  Under the Supreme Court's decision in *Booker*

           8   and its progeny, the guidelines range is only one factor that I

           9   must consider in deciding the appropriate sentence.  I am also

          10   required to consider the other factors set forth in 18, U.S.C.,

          11   Section 3533(a).  These include first the nature and

          12   circumstances of the offense and the history and

          13   characteristics of the defendant.  Second, the need for the

          14   sentence imposed to, A, reflect the seriousness of the offense,

          15   to promote respect for the law and to provide just punishment

          16   for the offense, B, to afford adequate deterrence to criminal

          17   conduct, C, to to protect the public from further crimes of the

          18   defendant, and D, provide the defendant with needed education

          19   or vocational training, medical care, or other correctional

          20   treatment in the most effective manner.  Third, the kinds of

          21   sentences available.  Fourth, the guideline range.  Fifth, any

          22   pertinent policy statements.  Six, the need to avoid

          23   unwarranted sentencing disparities among defendants among

          24   defendants with similar records who have been found guilty of

          25   similar conduct.  Seventh, the need to provide restitution to

1    to any victims of the offense.  Ultimately, I am required to

2    impose a sentence that is sufficient but no greater than

3    necessary to comply with the purposes of sentencing that I

4    mentioned a moment ago.

5         Now, I have given substantial thought and attention to

6    the appropriate sentence for Mr. Lewis in this case.  I have

7    considered all of the Section 3553(a) factors and the purposes

8    of sentencing as reflected in the statute.  Based on a review

9    of all of the those factors, which I going to discuss in much

10   more detail in a moment, I intend to impose a nonguideline

11   sentence of 109 months to be followed by three years of

12   supervised release subject to the mandatory and special

13   conditions described in the presentence report which I will

14   detail with more specificity later.

15        I do not expect to impose a fine.  I impose a

16   mandatory fee of $100.

17        Let me start with the nature the offense.  This is a

18   very serious offense.  Mr. Lewis was a part of the conspiracy

19   to sell crack cocaine.  The conspiracy scale and its impact

20   were significant.  Mr. Lewis and his coconspirators engaged in

21   conduct that injured not only the users of these narcotics that

22   they sold but the entire community.  The conspiracy involved

23   the sale of drugs and public places at all times of the day and

24   night even when surrounded by children.

25        The conspiracy used violence to protect the

Hai6lews

organization, violence which again impacted not only the direct
victims but also threatened the community in the Lincoln
Houses.  Mr. Lewis was personally responsible for the
distribution of a meaningful quantity of narcotics.  As Mr.
Cohen emphasized he is not being held responsible for sale of
all of the drugs sold in the conspiracy, but only the amount
for which he has accepted responsibility but even that quantity
is significant.  I also emphasize that Mr. Lewis possessed a
firearm in connection with this conspiracy which is of great
concern to me.

Mr. Lewis is now 31 years old.  He is no longer a
young man.  He was not a young man in 2015.  He was born in
November 1985.  I recognize that Mr. Lewis had a very difficult
childhood and I understand the impact that that has on the
choices that Mr. Lewis had in his life.  He experienced the
trauma of losing a brother in an accident when he was very
young.

His father left the family when Mr. Lewis was 13 years
old and Mr. Lewis moved frequently, living in a very small
apartment with all of his several siblings.  I understand that
Mr. Lewis's mother did her best to provide for all of the
children but she struggled.  Ultimately Mr. Lewis spent three
years in foster care where what was surely a traumatic
experience.  He was abused by some of the people entrusted with
his care and left without alternatives, and Mr. Lewis fell prey

Hai6lews

1   to the "lurer" of the streets and joined a set of the Bloods

2   gang at age 14.

3           Mr. Lewis has a young daughter, fruit of the flower of

4   a prior relationship and Mr. Lewis's daughter and her mother

5   have both written me about Mr. Lewis's efforts to remain in

6   contact with her during his period of incarceration and of his

7   importance in the life of his daughter which Mr. Lewis has

8   emphasized here.  I know that Mr. Lewis is now in a

9   relationship with Ms. Watts who has also written me.  Mr. Lewis

10  has explained during his interview the inspiration that

11  Ms. Watts provides for him to change his direction in life.  I

12  accept and applaud his desire to change his life so that he can

13  be more present in the life of his daughter.

14          I accept the positive comments that he has made today,

15  but unfortunately I have to take that in context.  As I have

16  already described generally, Mr. Lewis has had a long criminal

17  history.  His criminal history extends throughout his adult

18  life.  The convictions include drug trafficking crimes, two

19  relevant conduct offenses, robberies, attempted robberies,

20  criminal trespass, resisting arrest, and mischief among others.

21  I want to highlight in particular Mr. Lewis's August 2015

22  conviction for aggravated criminal contempt.  According to the

23  PSR, the police report for that offense states that the

24  defendant pulled the hair of the victim, slammed her head

25  against a gate, and then put both hands around her neck to

1    impede normal breathing.  This is an account of violence.  I

2    noted a number of arrests in the PSR which were not pursued

3    because of Mr. Lewis's conviction on unrelated offenses.

4            I highlight these offenses because they give me

5    concern regarding the risk that Mr. Lewis may present to the

6    community.  I say this with some real pain because I heard Mr.

7    Lewis speak to me very eloquently about his desire to change

8    and I accept that.  Against that as I said I have to balance

9    the fact of his long criminal history.  And the fact that Mr.

10   Lewis became a member of the street gang years before his first

11   arrest, I fundamentally have to be troubled by and am troubled

12   by the fact that Mr. Lewis has returned to committing crimes

13   despite each of those prior convictions even the convictions

14   for selling crack.  Those facts leave me very concerned about

15   Mr. Lewis's respect for the law and his ability to comply with

16   it.

17           Now, I have read the letters from "Lead by Example/

18   Reverse the Trend" and the other materials provided by the

19   defendant and I recognize again that it can be difficult for a

20   person in Mr. Lewis's situation, somebody who is already

21   incarcerated, to demonstrate their rehabilitation.  I applaud

22   the efforts that Mr. Lewis has made during the recent term of

23   incarceration for preparing himself for a law-abiding life.

24   Still I have to weigh those efforts against Mr. Lewis's

25   persistent criminal activity during the periods of time that he

1   has not been incarcerated.

2        Mr. Lewis was unable to complete unfortunately even

3   his first year of high school as a result of his state

4   conviction.  He has a very limited job history.  He provided

5   information about only two employers, an off-the-book job and

6   one while he was a juvenile.  Mr. Lewis is in generally good

7   physical health but is treated for hypertension and enlarged

8   heart.  He has issue with depressive disorder and anxiety

9   disorder and he has had some significant issues with drug use.

10   I should say particularly with marijuana, which he smoked since

11   he was 12.  He also experimented with Extacy.  Mr. Lewis

12   successfully completed a drug treatment program at Exodus, but

13   I understood that he returned to smoking marijuana after

14   completing that program because the PSR said he smoked it daily

15   through his arrest in 2014.

16        I believe a meaningful sentence is to be imposed in

17   this case to promote respect for the law and to impose a just

18   punishment.  I am required to consider a couple things.  First,

19   to consider the deterrent effect on Mr. Lewis personally and

20   the need to deter others from committing this crime.  Now, with

21   respect to personal deterrence, I again recognize Mr. Lewis's

22   commitment to turn his life around, but I am still concerned

23   about the possibility that Mr. Lewis will be tempted to

24   recidivate.  Let me explain some of the reasons why I have that

25   concern.

1  I start with his early membership in a street gang at

2  age 14.  He has a number of prior state convictions, including

3  two prior state drug offenses and two attempted robberies.  He

4  returned to crime again and again despite those prior

5  convictions.  As the government summarized in its letter to me,

6  Mr. Lewis has repeatedly demonstrated his inability to comply

7  with or perhaps lack of concern about the law.  The government

8  writes that that has manifested itself "in every conceivable

9  way from repeated violations of parole, to violations of

10  protective orders, to carrying narcotics into prison

11  facilities, to lying to law enforcement, to resisting arrest,

12  to ignoring court orders of appearance, to returning to

13  criminal conduct again and again after serving terms of

14  imprisonment."  Added to this unfortunately is the difficulty

15  of his present circumstances, namely, even with the motivation

16  of his daughter and his concurrent relationship with Ms. Watts,

17  his broader lack of family support, education, and the

18  legitimate job experience all of this increases my concern that

19  Mr. Lewis will reactivate.  I should say increases my concern

20  but it doesn't mean it is a certainty.  I very much hope that

21  Mr. Lewis will be able to embrace a life that will allow him to

22  be in his daughter's life and to support his mother and

23  partner.

24  Because Mr. Lewis had a weapon in connection with this

25  offense and because of some of the violent nature of his

1  conduct that was described that underlies 2015 conviction that

2  I described earlier, I am particularly concerned about

3  potential risk to the public in the event that he does

4  ultimately recidivate.  I must also consider the goal of

5  general deterrence and by imposing a meaningful sentence, I

6  hope that it will be effective to dissuade others from engaging

7  in similar conduct.  Mr. Lewis will be able to use the period

8  of incarceration for educational and vocational training,

9  medical care or other correctional treatment.

10         Mr. Lewis has a few needs in particular, which I hope

11  can be addressed.  First, Mr. Lewis needs drug treatment to

12  help him stop using marijuana and potentially other drugs.

13  Second, I hope that Mr. Lewis will take advantage of the

14  opportunities that are available to him to advance his

15  education and to learn the job skills that he will need to have

16  to succeed when he is released.  In particular, I hope that Mr.

17  Lewis will continue his work that he began at Green and now has

18  continued at MCC to obtain his GED.  These are basic life

19  skills that Mr. Lewis wants to develop the life that he has

20  described that he needs to obtain and I hope that he will take

21  advantage of this time to do so.

22         I have considered the kinds of sentences available.

23  In this case I believe that a sentence involving a meaningful

24  term of incarceration is appropriate.  I have given serious

25  consideration to the guidelines and policy statements.  In this

Hai6lews

1  this case my sentence reflects a downward departure and that

2  gives effect to the 42 months that Mr. Lewis spent incarcerated

3  for crimes that constitute the relevant conduct for this

4  offense.  I have considered the need to avoid unwarranted

5  sentencing disparities.

6       On balance, given Mr. Lewis's circumstances I believe

7  the sentence is appropriate for him.  First, I would like to

8  make a few comments.  Noting that Mr. Lewis is a career

9  offender has much more significant criminal history than any of

10  the other defendants who I have sentenced in this case.  While

11  the amount of cocaine base for which he has accepted

12  responsibility here is lower than that of some of his

13  codefendants, his criminal history and his career offender

14  status together with the fact that he had a firearm in

15  connection with this offense in my view justified a

16  significantly greater than those codefendants.  And one the

17  principal things I need to look at in evaluating the

18  appropriate sentence is the characteristics of the defendant,

19  in this case the defendant's prior criminal history weighs

20  heavily in my considerations.

21       As I say this is particularly true given my view given

22  the fact that Mr. Lewis had a firearm during the course of this

23  offense, which gives me concern about risk to the public, and

24  given the nature of certain of the offenses that are the

25  conduct that led to his prior convictions and I described one

1    of the crimes for which he accepted responsibility in 2015,

2    which according to the police report's description involved

3    some amount of violence.

4           So with that, Mr. Lewis, please rise for the

5    imposition of sentence.

6           Mr. Lewis, it is the judgment of this Court that you

7    be sentenced to 109 months of imprisonment.  This term of

8    incarceration shall be served concurrently with the

9    undischarged portions of Mr. Lewis's state offenses in the

10   mattered No. 010202015 and 02149-2015 in New York County and

11   Bronx County respectively.  I believe that a concurrent

12   sentence for this and the state offenses provides reasonable

13   punishment for this offense.  Mr. Lewis, following your term of

14   imprisonment, I am sentencing you to a term of three years of

15   supervised release which is within the guidelines range.  The

16   mandatory conditions of supervised release shall apply.  They

17   are:  The defendant shall not commit another federal, state or

18   local crime; the defendant shall not unlawfully possess a

19   controlled substance; the defendant shall refrain from any

20   unlawful use of a controlled substance.

21          The mandatory drug testing condition is suspended due

22   to the imposition of a special condition requiring drug

23   treatment and testing.  The defendant shall cooperate from the

24   collection of DNA as directed by the Probation officer.  The

25   standard conditions of supervised release 1 through 13 shall

Hai6lews

1      apply.

2            In addition, the following special conditions shall

3      apply:  The defendant shall submit his person, residence, place

4      of business, vehicle, and any property or electronic devices

5      under his control to a search on the basis that the Probation

6      officer has reasonable suspicion that contraband or evidence of

7      a violation of the conditions of the defendant's supervised

8      release may be found.  The search must be conducted at a

9      reasonable time and in a reasonable manner.  Failure to submit

10     to a search may be grounds for revocation.  The defendant shall

11     inform any other residence that the premises may be subject to

12     search pursuant to this condition.

13           The defendant shall participate in an outpatient

14     treatment program approved by the United States Probation

15     Office, which program may include testing to determine whether

16     he has reverted to using drugs or alcohol.  The defendant shall

17     contribute to the cost of services rendered based on his

18     ability to pay and the availability of third-party payments.

19     The Court authorizes the release of drug treatment evaluations

20     and reports, including the presentence investigation report

21     that the substance abuse treatment provider.  The defendant

22     shall be supervised in his district of residence.

23           There will be no fine because the Probation Department

24     reports that you are unable to pay one, Mr. Lewis.  The

25     defendant must pay to the United States a total special

Hai6lews

1    assessment of $100.

2         Ms. Houle, I understand the government is not seeking

3    forfeiture or restitution in this matter; is that correct?

4         MS. HOULE:  That's correct.

5         THE COURT:  Does counsel know of any legal reason why

6    this sentence shall not be imposed as stated?

7         MS. HOULE:  No, your Honor.

8         MR. COHEN:  No legal reason.

9         THE COURT:  The sentence as stated is imposed.  I find

10   the sentence to be sufficient but not greater than necessary to

11   comply with the purposes of sentencing set forth in 18, U.S.C.,

12   Section 3553(a)(2).

13        You can be seated, Mr. Lewis.

14        Mr. Lewis, you have the right to appeal your

15   conviction and sentence except to whatever extent you may have

16   validly waived that right as part of your plea agreement.  The

17   notice of appeal must be filed within 14 days of the judgment

18   of conviction.  If you are not able to pay the cost of an

19   appeal, you may apply for leave to appeal in forma pauperis.

20   If request the Clerk of Court will prepare and file a notice of

21   appeal on your behalf.

22        Are there any other applications?

23        MR. COHEN:  Obviously pursuant to the plea agreement

24   and since your Honor has sentenced Mr. Lewis to a nonguideline

25   sentence that is lower, there is no basis for an appeal.  No

Hai6lews

1   appeal will be filed, your Honor.

2          THE COURT:  Thank you.  Do you have any other

3   applications?

4          MR. COHEN:  The other application, your Honor, if you

5   could recommend to the Bureau of Prisons that Mr. Lewis serve

6   his sentence in the New York area either Fort Dix or Danbury,

7   that will be greatly appreciated.  So his family and especially

8   his daughter can visit.

9          THE COURT:  I am be happy to do that.  The BOP is

10  authorized to completely ignore my recommendation, but I will

11  put that in the judgment.  Thank you.

12         MR. COHEN:  So it is clear to me, your Honor, which I

13  think it is, the sentence that you imposed already considers

14  the 42 months that he served in connection with the relevant

15  conduct?

16         THE COURT:  Yes.  It is 42 months less than the

17  otherwise bottom of the guideline range.

18         MR. COHEN:  Very well, your Honor.

19         THE COURT:  Thank you.

20         MS. HOULE:  Your Honor, may I have one moment with

21  defense counsel?

22         THE COURT:  Please.

23         (Pause)

24         MS. HOULE:  Your Honor, if I may note for the record,

25  and I don't recall if defense counsel said this in his remarks,

Hai6lews

1  but defense counsel was given the opportunity to meet with the

2  defendant in advance of sentencing regarding the government's

3  letter that was filed on Monday.

4         THE COURT:  Thank you.  I heard that in his comments.

5         MS. HOULE:  No other applications from the government,

6  your Honor.

7         THE COURT:  Thank you.

8         Let me take one moment, Mr. Lewis.  You don't need to

9  stand.  I just wanted to say when you spoke to me now as

10 Ms. Houle just said, you were incredibly eloquent.  I believe

11 you.  I believe that you want to develop a life so that you can

12 be present in the life of your daughter.  I believe you.  I

13 think that you can do it.

14        As I am sentencing you, I have to look at the whole

15 bundle of everything that has happened in your life.  And as I

16 tried to say earlier, it is difficult for me because I see a

17 snapshot of what you did while you're incarcerated and I don't

18 want you to take from this that I think anything but that you

19 are truly committed to turning your life around and nor that

20 you cannot do it.  I think that you can do it.  I have to

21 recognize that it is going to be a lot of work for you to do it

22 and the difficulties that you are going to have as you are

23 doing that.  I think you can do it.

24        In some ways I want to say I am sorry that you cannot

25 see deeply into your heart as I am doing this, but that doesn't

Hai6lews

1    mean that I think that anything other than you can achieve the

2    goal that you told me you are going to achieve and how much I

3    hope that you can do that and be a presence in your daughter's

4    life.  So I don't disbelieve you.  I know that you can do this

5    and I hope you don't think you can do anything but achieve your

6    goals.  I wish you the best of luck.  Thank you.

7           This proceeding is adjourned.

8                           o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25